UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,        :

                        :

      v.                    :      **MEMORANDUM & ORDER**

                        :      19-CR-490 (WFK)

OCTAVIO MALDONADO,        :

                        :

         Defendant.     :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 21, 2022, Octavio Maldonado ("Defendant") pled guilty to the sole count of an Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 110 months of imprisonment, to be followed by two years of supervised release with special conditions, forfeiture in accordance with the order of forfeiture, and a $100.00 mandatory special assessment.

## I. Background

On February 10, 2019, Defendant attended a birthday party for his girlfriend in Brooklyn, New York. Presentence Investigation Report ("PSR") ¶ 4, ECF No. 60. At the party, Defendant confronted a friend of his then-girlfriend's brother, accusing him of touching his girlfriend. *Id.* Defendant then pistol-whipped the friend across the face, breaking the friend's jaw. *Id.* The impact caused the gun to fire, lodging a bullet in the apartment wall. *Id.* Police were called, and they uncovered a loaded black handgun in a garbage bag near the apartment. *Id.* ¶ 5. On February 22, 2019, Defendant surrendered himself to the New York City Police Department ("NYPD") in connection with the assault. *Id.* ¶ 7. On October 24, 2019, a grand jury returned a one-count Indictment, charging Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 1 ¶ 1. The Indictment also contains a criminal forfeiture allegation. *Id.* ¶ 2. On November 5, 2019, Deputy United States Marshals arrested Defendant for the instant offense. PSR ¶ 7.

1

Defendant originally entered a plea of not guilty on November 5, 2019. ECF No. 3. However, on March 21, 2022, Defendant changed his plea to guilty. ECF No. 58. As part of his written plea agreement, Defendant agreed not to appeal or otherwise challenge his sentence if this Court sentences him to a term of imprisonment of 137 months or below. ECF No. 58 ¶ 4.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## II.  Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## III.  Analysis

### A.  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

### 1. Family and Personal Background

Defendant was born on March 2, 1979, in Manhattan, New York, to the consensual union of Octavio Maldonado, Sr. and Georgina Martinez. PSR ¶ 37. Defendant has no information about his father, with whom he reports having no relationship. *Id.* According to Defendant, his mother struggled with drug addiction her entire life, and ultimately died of an overdose on April 27, 2009. *Id.* ¶¶ 37, 39. Defendant resided with, and was primarily raised by, his maternal grandparents, Pilar Rodriguez and Bolivar Castillo. *Id.* Although defense counsel asserts that Defendant only resided with his grandparents following his mother's death, Defense Memorandum ("Def. Mem.") at 3, ECF No. 66, Probation reports, based on an interview with Defendant, that he was placed in their custody shortly after he was born, PSR ¶ 39. According to Probation, Defendant and his grandparents lived in the Bronx, New York for most of Defendant's childhood, but moved to Manhattan, New York in 1992 after Defendant's grandfather accepted a new position as a building superintendent. *Id.* ¶ 40. Defendant reports having a very close relationship with his grandmother, who died in his arms in 1999 at the age of 72 from a heart attack. *Id.* ¶ 37. His maternal grandfather died five years later, in 2004, also from a heart attack. *Id.* Defendant reports being deeply affected by the death of his grandmother and suggests this precipitated a decline in his mental state. *Id.* Defendant moved out of his grandparents' home after his grandmother's death. *Id.* ¶ 41. After a period of travel, he eventually took up residence with his maternal uncle in Manhattan, New York. *Id.* ¶ 41.

Despite his mother's struggles with heroin addiction and the general absence of his parents during his childhood, Defendant says his needs were otherwise met under the care of his

grandparents. *Id.* ¶ 39. According to Defendant, his grandparents were quite strict, and his grandfather would hit him with a belt when he misbehaved. *Id.* Defendant reports being bullied in school by children who would mock his limited understanding of English and his clothing. *Id.*

Defendant has two maternal half-sisters and one maternal half-brother. *Id.* ¶ 38. According to Defendant, his half-siblings, with whom he speaks daily, are aware of the instant prosecution and remain supportive. *Id.*

Defendant entered a consensual relationship with Denise Jones, a crossing guard in Manhattan, in 2001. *Id.* ¶ 41. Their relationship ended in 2008 as a result of Defendant's gambling addiction. *Id.* They share one 17-year-old son, who is aware of the instant prosecution and, while upset, remains supportive. *Id.* According to Defendant, Ms. Jones remains the primary caregiver of their son, although Defendant has custody of him on the weekends and pays weekly child support. *Id.*

In 2019, Defendant entered a relationship with Bianca Cartegina, a check cashing business manager who resides in Brooklyn, New York. *Id.* ¶ 42. They became engaged in 2021. *Id.* The two share a daughter together. *Id.* Through his relationship with Ms. Cartegina, Defendant also has two stepchildren. *Id.* According to Defendant, his relationships with both his biological children and stepchildren remain strong. *Id.* According to Ms. Cartegina, Defendant is a loving father and stepfather, and has turned his life around. *Id.* She reports that it will be very difficult for her and her children if Defendant is taken into custody. *Id.*

Probation reports that Defendant was also apparently romantically involved with Diana Caro during the period leading up to the instant offense. *Id.* ¶ 44. Ms. Caro, who resides in Brooklyn, New York, reports that the relationship ended after the commission of the instant offense. *Id.*

2.      Educational and Employment History

Defendant reports attending Taft High School in the Bronx, New York, between 1992 and 1993.  *Id.* ¶ 55.  While Defendant did not graduate from Taft, he reports earning a GED while incarcerated in New York State in 2002.  *Id.* ¶ 54.  Although Prison records confirm that Defendant earned his GED, Probation found no record of his GED after searching the New York State High School Equivalency ("HSE") Status Report database.  *Id.*

While incarcerated in 2014, Defendant reports earning both an HVAC and a forklift certificate.  *Id.* ¶ 56.  Defendant also reports earning a Universal Technician certificate for Proper Refrigerant Practices while incarcerated at SCI-Albion in 2000.  *Id.*

Defendant has been employed as a hotel engineer for Greenparc Hospitality in New York, New York, since 2020.  *Id.* ¶ 57.  As part of this job, Defendant works at the Fairfield Inn and Suites on 37th Street in Manhattan, New York, to ensure the hotel's boiler and HVAC systems are functioning well.  *Id.*  In this role, Defendant works 40 hours per week and earns a yearly salary of $40,000.  *Id.*  Prior to his current employment, from 2018 to 2020, Defendant worked at PBM, located in Manhattan, New York, as an overnight porter.  *Id.* ¶ 58.  Defendant also reports he worked as a daytime housekeeper at a Holiday Inn in Brooklyn, New York from 2018 to 2020, although neither Defendant nor the company have provided Probation with Defendant's employment records.  *Id.* ¶ 59.  Defendant has also worked at a Gristedes supermarket in Manhattan, at Aramark as a seasonable employee, and on Ellis Island as a prep cook, cashier, and maintenance worker.  *Id.* ¶ 60.  Defendant reports paying taxes as required each year.  *Id.* ¶ 61.

3.      Prior Convictions

Defendant has an extensive criminal history.  In 1998, in New York County Criminal Court in Manhattan, New York, Defendant was convicted of attempted criminal sale of a controlled

substance in the third degree. *Id.* ¶ 22. In 2000, also in New York County Criminal Court in Manhattan, New York, Defendant was convicted of assault in the third degree after forcibly removing a victim from a vehicle, beating the victim, throwing a bottle at the victim's head, stabbing the victim, and then slashing the victim's face twice with a knife. *Id.* ¶ 23. In 2001, in New York County Supreme Court in Manhattan, New York, Defendant was convicted of criminal sale of a controlled substance in the third degree. *Id.* ¶ 24. In 2001, in New York County Supreme Court in Manhattan, New York, Defendant was convicted of intent to perform a Class A Felony. *Id.* ¶ 25. While Probation did not receive a copy of the court records, the NYPD arrest report listed Defendant as a CRIP gang member. *Id.* Defense counsel denies that Defendant is or was a member of a gang. Def. Mem. at 3, 7. In 2002, in New York County Supreme Court in Manhattan, Defendant was convicted of criminal possession of a controlled substance in the third degree with intent to sell. PSR ¶ 26. In 2006, in New York County Criminal Court in Manhattan, New York, Defendant was again convicted of assault in the third degree after striking his partner with a closed fist and cell phone while she was holding Defendant's infant son. *Id.* ¶ 27. In 2011, in Monroe County Court of Common Pleas in Stroudsburg, Pennsylvania, Defendant was convicted of possession with intent to deliver a controlled substance. *Id.* ¶ 28. In 2014, in Lackawanna County Court of Common Pleas in Scranton, Pennsylvania, Defendant was again convicted of possession with intent to deliver a controlled substance after selling crack cocaine to an undercover informant. *Id.* ¶ 29. Notably, Defendant was on parole for this conviction at the time of the instant offense. *Id.* Defendant was discharged from parole on August 16, 2021. *Id.*

4.      Physical and Mental Health

Defendant reports that he is generally healthy, although he has been diagnosed with high blood pressure and high cholesterol. *Id.* ¶ 48. While Defendant does not report any current mental

health issues, he notes that he previously suffered from a gambling addiction, which resulted in the loss of thousands of dollars and the dissolution of his relationship with Ms. Jones. *Id.* ¶ 49. Defendant reports that he no longer struggles with this addiction. *Id.*

     5.     Substance Abuse

According to Defendant, he first consumed alcohol and smoked marijuana at age 13. *Id.* ¶¶ 50, 51. He further reports that he used to pay for his alcohol and marijuana habits by selling drugs. *Id.* While Defendant reports that he used to be an alcoholic, he has not consumed alcohol since 2020 and he has not smoked marijuana since 2011. *Id.* At various times between 2003 and 2007, Defendant completed Alcohol and Substance Abuse Treatment programs for his alcohol and marijuana use while incarcerated. *Id.*

Defendant also reports a history of ecstasy use. *Id.* ¶ 52. Defendant reports that he began taking ecstasy when he was 27 and, at his worst, would take 5-6 pills per day. *Id.* As with his marijuana and alcohol abuse, Defendant paid for this habit by selling drugs on the street. *Id.* Defendant reports detoxing from the drug on his own, without treatment, which he says was very hard. *Id.*

     6.     Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with

needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved knowingly possessing a firearm after having sustained previous convictions exceeding one year. ECF No. 1 ¶ 1. The Court also recognizes Defendant's substantial criminal history. Not only does Defendant have eight prior convictions, but he committed the instant offense while on parole for a conviction of possession with intent to distribute a controlled substance. PSR ¶¶ 29, 31. The Court takes into account the seriousness of the offense in imposing sentence.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of an Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant faces various penalties for committing this offense, including terms of imprisonment and supervised release in addition to fines and a special assessment.

Specifically, Defendant faces a maximum term of imprisonment of ten years, and no minimum term of imprisonment. 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pursuant to 18 U.S.C. § 3583(b)(2), Defendant faces a term of supervised release of not more than three years; if he violates a condition of supervised release, he may be sentenced to a maximum of two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Defendant is also eligible for not less than one nor more than five years of probation, but one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. §§ 3561(c)(1) and 3563(a)(2). The Court may impose a fine of not more than $250,000.00 pursuant to 18 U.S.C. §

3571(b). However, a review of Defendant's financial profile suggests he is unable to pay a fine. PSR ¶ 65. Defendant also faces forfeiture of the firearm seized during Defendant's arrest, as outlined in the order of forfeiture. ECF No. 71. The Court is also required to impose a mandatory special assessment of $100.00 per count in accordance with 18 U.S.C. § 3013.

In addition to these penalties, Defendant also faces various collateral consequences as a result of this felony conviction. *See* PSR ¶ 77.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 922(g)(1), as contained in the sole-count of the Indictment, is United States Sentencing Guidelines ("U.S.S.G.") §2K2.1(a)(1), which provides for a base offense level of 24 where, as here, the defendant committed the offense subsequent to sustaining two felony convictions for controlled substance offenses. PSR ¶ 11.

Pursuant to U.S.S.G. §2K2.1(b)(6)(B), four additional levels are added because Defendant possessed a firearm and ammunition during the commission of another felony offense, namely assault in the first degree, in violation of New York Penal Law § 120.10. PSR ¶ 12.

Defendant's offense level is decreased by two levels pursuant to U.S.S.G. §3E1.1(a), which accounts for Defendant's acceptance of responsibility. *See also* PSR ¶ 18. Moreover, Defendant's offense level is decreased by one more level pursuant to U.S.S.G. §3E1.1(b) because the Government was notified in a timely manner of Defendant's intention to plead guilty. *See also* PSR ¶ 19. This brings Defendant's total adjusted offense level to 25.

As the Court has discussed, Defendant's criminal history is extensive. His eight prior criminal convictions result in a criminal history score of 15. *Id.* ¶ 30. Because Defendant committed this offense while on parole for another conviction, another point is added pursuant to U.S.S.G. §4A1.1(E). This increases his criminal history score to 16. Probation cites U.S.S.G. §4A1.1(d) for the proposition that *two* additional points are warranted for his commission of the offense while on parole, resulting in a criminal history score of 17. PSR ¶ 31. However, because Probation based this calculation on the 2021 Guidelines Manual, which has since been amended, this is incorrect. *See id.* ¶ 10. As previously stated, the correct Guidelines Section is 4A1.1(e), which provides for only one additional point. However, because criminal history scores of both 16 and 17 result in a criminal history category of VI according to the sentencing table in U.S.S.G Chapter 5, Part A., the error does not otherwise affect Probation's calculations. *See* PSR ¶ 32.

A total adjusted offense level of 25 coupled with a criminal history category of VI results in an effective Guidelines range of imprisonment between 110 and 120 months. U.S.S.G Chapter 5, Part A. This is consistent with the calculation Probation provided in its Presentence Investigation Report. PSR ¶ 67. Neither the Government nor defense counsel objects to these calculations.[1] *See generally* Defense Memorandum ("Def. Mem."), ECF No. 66.; Government Memorandum ("Gov't Mem.") at 2-3, ECF No. 68.

Probation recommends a sentence of 110 months of imprisonment followed by two years of supervised release with special conditions. Probation Recommendation at 1, ECF No. 60-1. Probation argues such a sentence is warranted because Defendant has numerous prior convictions

---

[1] It is worth noting that the plea agreement Defendant signed assumes a criminal history category of V, as opposed to VI. ECF No. 58 ¶ 2. With a criminal history category of V and an adjusted offense level of 25, the plea agreement notes that the Guidelines range of imprisonment is 100-125 months. *Id.* However, based on the criminal history record provided by Probation, Defendant properly has a criminal history score of VI, meaning an effective range of 110-120 is correct. PSR ¶¶ 22-29; *see also* U.S.S.G. § 4A1.1.

and "continues to engage in serious conduct." *Id.* Probation further suggests that a sentence of 110 months of imprisonment accounts for the serious injury suffered by the individual whom Defendant assaulted in the commission of this offense. *Id.* Probation also recommends the imposition of the mandatory $100.00 special assessment.

The Government recommends a Guidelines sentence of between 110 and 120 months of imprisonment. Gov't Mem. at 4. In support for this recommendation, the Government emphasizes that, in committing the offense, Defendant not only carried a loaded firearm, but used it "as a bludgeon" which "could have resulted in deadly injury." *Id.* The Government further highlights Defendant's extensive criminal history and the resultant need for a significant sentence because "prior lenient sentences have not deterred [Defendant] from engaged in criminality." *Id.* The Government also asks the Court to consider Defendant's actions in light of "the recent harm inflicted by illegal firearms within the Eastern District of New York." *Id.* While the Government "acknowledges the difficult circumstances of the defendant's upbringing[]" and that "other than the significant crime of conviction in this case, the defendant's prior convictions are a decade or more old," on the whole the § 3553(a) factors warrant a Guidelines sentence. *Id.* at 5.

Defense counsel recommends a sentence of up to 36 months of imprisonment. Def. Mem. at 2. As of the sentencing hearing, defense counsel disputes Probation's calculations, offense levels, and Guidelines ranges. Defense counsel challenges the effective Guidelines range of 110 to 120 months of imprisonment, and argues for a significant downward departure for his client. Further, defense counsel emphasizes that incarceration is not required by statute and that "there are other forms of punishment available: home incarceration or weekend incarceration, significant community service" which defense counsel asks this Court to consider instead of incarceration. *Id.* at 6.

Defense counsel states that a term of imprisonment of up to 36 months is warranted because Defendant surrendered himself to law enforcement and is taking responsibility for his actions; because Defendant is committed to his family and his career, as evidenced by his employment history; and because Defendant is a changed man who has not had any infractions while under supervision after his arrest. *Id.* at 4-5. Defense counsel further notes that because of Defendant's growth and commitment to his work and family, a lengthy sentence would not serve a deterrent effect and would instead remove a hardworking, productive individual from contributing to his community. *Id.* at 5-6. Indeed, defense counsel represents that Defendant "fears that his new wife would have to move to a smaller residence and likely begin receiving governmental assistance for the three (3) children." *Id.* at 5 n.1. Probation's interview with Defendant's wife corroborates the difficulty Defendant's incarceration would pose for his family. *See* PSR ¶ 42.

In his untimely March 2, 2024 letter styled as a supplement to his Guidelines analysis, defense counsel noted that, pursuant to the Second Circuit's decision in *United States v. Chaires*, 88 F.4th 172 (2d Cir. 2023), Defendant's prior narcotics convictions may no longer count as "controlled substance offenses" under §2K2.1(a)(1). Def. Suppl. Mem at 1., ECF No. 70. According to defense counsel, this would suggest that Defendant's base offense level "may very well be" 14 instead of 24. *Id.* Defense counsel affirmatively made this argument at Defendant's sentencing hearing and suggested the Guidelines calculations are incorrect as a result.

The Second Circuit in *Chaires* held that New York state drug offenses criminalized under a state provision which is "categorically broader than the federal predicate definition in section 4B1.2(b)" cannot serve as predicates under that Guidelines section. 88 F.4th at 175. Indeed, *Chaires* was not the first case to address this: *Chaires* relies on the 2018 Second Circuit decision *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), which directly addressed the issue of

12

controlled substance offense predicates under §2K2.1(a)(1); *see also id.* at 69 ("Section 2K2.1 of the Guidelines adopts the definition of a 'controlled substance offense' in §4B1.2(b).").

While the Court agrees that Defendant's New York drug convictions may not qualify as predicates for the purposes of §2K2.1(a)(1), defense counsel failed to provide any reason why Defendant's Pennsylvania convictions should not constitute predicate controlled substance offenses under this provision. *See* Def. Mem. at 1-2. Addressing the issue on its own, the Court determines that Defendant's Pennsylvania convictions constitute predicate "controlled substance offenses" warranting the application of §2K2.1(a)(1) and a base offense level of 24. The Third Circuit has repeatedly held that Pennsylvania state drug offenses, at least those outlined in 35 Pa. Stat. § 780-113(a)(30), can serve as predicate controlled substance offenses under the Sentencing Guidelines. *See United States v. Glass*, 904 F.3d 319, 324 (3d Cir. 2018) ("In sum, because § 780-113(a)(30) does not sweep more broadly than § 4B1.2, it is a 'controlled substance offense' and may serve as a predicate offense to a career-offender enhancement under § 4B1.1."); *see also United States v. Robinson*, 763 F. App'x 213, 215-16 (3d Cir. 2019). The Pennsylvania state drug offenses in 35 Pa. Stat. § 780-113(a)(30) track Defendant's Pennsylvania convictions. *Compare* PSR ¶¶ 28-29 (listing two Pennsylvania felony convictions for possession with intent to deliver a controlled substance) *with Glass*, 904 F.3d at 322 ("Section 780-113(a)(30) prohibits 'the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.'"). Notably, the Second Circuit has *also* interpreted the crimes contained in the Pennsylvania state statutes at issue here as "categorically … federal controlled substance offense[s]." *Collymore v. Lynch*, 828 F.3d 139, 143 (2d Cir. 2016). Although *Collymore* was not a Guidelines case, the characterization of the Pennsylvania offenses as federal controlled substance

13

offenses suggests the Second Circuit would agree with the Third Circuit. While Defendant's New York narcotics convictions may not qualify as predicate controlled substance offenses, Defendant's Pennsylvania narcotics convictions qualify and, therefore, satisfy §2K2.1(a)(1).

This Defendant earned a criminal history score of 16 and a criminal history category of VI, and a total adjusted offense level of 25. This Court now explicitly determines the effective Guidelines range of imprisonment applicable to this case is 110 to 120 months. Even if the controlled substance offenses in this case did not constitute controlled substance offenses for the purposes of the Guidelines, Defendant engaged in outrageous violence: pistol whipping an innocent man in the face.

This Court has read and considered the letters written by Defendant's supervisors, managers, and loved ones. Exhibits 1-3 to Supplement to Defendant's Memorandum, ECF Nos. 67-1, 67-2, 67-3. These letters describe Defendant as a hard-working employee, a committed father and brother, and a loving leader and protector. *Id.* The Court appreciates what Defendant's advocates have said on his behalf.

If sentenced to incarceration, defense counsel asks the Court to recommend that BOP provide Defendant with medication for his high blood pressure and cholesterol. *Id.* at 7. In the event Defendant is sentenced to a period of incarceration, defense counsel also asks that Defendant be allowed to participate in vocational or education programs, that Defendant be placed in a facility close to New York to facilitate family visits, and that Defendant be able to participate in a substance abuse program, even though he has not used drugs for many years. *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.  Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission."  18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.  The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).  Restitution is not applicable in Defendant's case.

## IV. Conclusion

For the reasons set forth above, the Court determines a sentence of 110 months of imprisonment to be followed by two years of supervised release with special conditions, forfeiture in accordance with the order of forfeiture, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).  The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 60, as corrected herein, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 4, 2024
Brooklyn, New York